FILED

2014 Feb-03  AM 08:42
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CV No.:  2:13-cv-1835-HGD ) |
| CAROLYN DENMARK, individually; | ) ORAL ARGUMENT REQUESTED |
| CAROLYN DENMARK, as personal Representative of the Estate of Donald Norman Denmark, Jr.; BETTY CAROL WREN, individually; BETTY CAROL WREN d/b/a Loletah's Salon; and LOLETAH'S SALON, INC., | ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

## PLAINTIFF STATE FARM FIRE AND CASUALTY COMPANY'S MOTION FOR SUMMARY JUDGMENT AND SUPPORTING BRIEF

A. DAVID FAWAL [FAW-004]
KATHERINE "KATIE" POWELL [TAY-081]
**BUTLER SNOW LLP**
One Federal Place, Suite 1000
1819 5th Avenue North
Birmingham, Alabama 35203
Telephone:  (205) 297-2200
Facsimile:   (205) 297-2201

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................ 1

II.   NARRATIVE STATEMENT OF UNDISPUTED RELEVANT FACTS ........................... 2

III.  RELEVANT LEGAL AUTHORITIES ..................................................................... 7

  A.  STANDARD OF REVIEW .................................................................................. 7

  B.  LEGAL ARGUMENT ........................................................................................ 8

    1.  Legal basis for the duty to defend and indemnify ....................................... 8

    2.  This Court has jurisdiction to determine State Farm's duties to defend and
        indemnify. .......................................................................................... 10

    3.  The Wren Defendants are not insureds as defined by the Policy. ........................... 11

      a.  Betty Carol Wren, individually, is not an insured as defined by the Policy. ........... 12

        i.    Loletah's Salon Inc. as an Incorporated entity ................................... 12

        ii.   Even if the Policy reflected the structure of the business as that of a sole
              proprietorship, neither Betty Carol Wren, Wren d/b/a Loletah's Salon nor Wren
              d/b/a Loletah's VIP Salon would be an insured as defined by the Policy. .............. 20

    4.  The Automobile Exclusion applies to preclude coverage for the underlying lawsuits
        and no exception to the Exclusion is applicable. .......................................... 22

      a.  The Automobile Exclusion applies to preclude coverage. .................................... 22

      b.  The Exceptions to the Automobile Exclusion is inapplicable. ............................... 23

    5.  The Conditions of the Policy have been violated due to late reporting. ................... 24

      a.  Timely Notice Was Not Provided. ......................................................... 25

      b.  There is No Valid Reason for the Untimely Delay in Notice. ............................... 26

      c.  State Farm was prejudiced by the untimely and unreasonable delay in notice. ... 28

    6.  Medical Payments Coverage is not available under the Policy. .............................. 29

IV.   CONCLUSION .............................................................................................. 30

## <u>PLAINTIFF STATE FARM'S MOTION FOR SUMMARY JUDGMENT AND SUPPORTING BRIEF</u>

**COMES NOW** Plaintiff State Farm Fire and Casualty Company ("State Farm"), and moves this Honorable Court, pursuant to Rule 56, Fed. R. Civ. P., to grant summary judgment in its favor, as there is no genuine issue of material fact and State Farm is entitled to judgment as a matter of law.

## I.     INTRODUCTION

This action arises out of two underlying lawsuits both stemming from a tragic automobile accident and whether a State Farm Business Policy provides coverage for Betty Carol Wren, Betty Carol Wren d/b/a Loletah's Salon or Loletah's Salon Inc. (collectively, the "Wren Defendants") for the underlying lawsuits. As set forth more fully below, there are multiple reasons that independently warrant summary judgment and dictate that State Farm has no duty to defend or indemnify the Wren Defendants under the Business Policy for the underlying lawsuits. <u>First</u>, none of the Wren Defendants are insureds as defined by the Policy. <u>Second</u>, even if any of them were insureds as defined by the Policy, the Automobile Exclusion precludes coverage for the underlying lawsuits.[1] <u>Third</u>, the Conditions of the Policy have been violated due to late reporting and resulting prejudice to State Farm. Based on any or all of the independent reasons cited above, summary judgment should be granted in State Farm's favor.

---

[1] Ultimately, the State Farm Business Policy is <u>not</u> an automobile policy and thus provides no coverage for the underlying automobile accident.

## II.    NARRATIVE STATEMENT OF UNDISPUTED RELEVANT FACTS

1.    On April 19, 2012, Carolyn Denmark ("Denmark"), individually filed suit in the Circuit Court of Cullman County, Alabama against Betty Carol Wren, et al. alleging negligence and wantonness stemming from an auto accident occurring on February 27, 2012.[2] On August 6, 2012, Carolyn Denmark as personal representative of the Estate of Donald Norman Denmark, Jr. ("Denmark, Jr.") filed suit in the Circuit Court of Cullman County, Alabama against Betty Carol Wren, et al.[3] alleging negligence and wantonness stemming from the same auto accident (the "auto accident").[4]

2.    On January 21, 2013, Amended Complaints were filed in <u>both</u> lawsuits adding defendants "Loletah's Salon, Inc." and "Betty Carol Wren d/b/a/ Loletah's Salon." *(See generally* Underlying Am. Complts., Ex. A and B). The Amended Complaints also added Agency counts against Betty Carol Wren, d/b/a/ Loletah's Salon and against Loletah's Salon, Inc. *Id.*

3.    The Underlying Complaints, as Amended, allege that on February 27, 2012 the Denmarks were passengers in a vehicle traveling north on Highway 157

---

[2] *See generally* Underlying Complaint in *Carolyn Denmark v. Betty Carol Wren*; *Loletah's Salon, Inc.; and Betty Carol Wren d/b/a Loletah's Salon*, CV-2012-900124, Cullman Co., Alabama, attached as **Exhibit "A"**.

[3] Allstate was also a defendant in the underlying suits for Uninsured Motorist Benefits, but was eventually dismissed from the underlying actions and was not included in this action.

[4] *See generally* Underlying Complaint in *Carolyn Denmark, personal representative of the Estate of Donald Norman Denmark, Jr. v. Betty Carol Wren; Loletah's Salon, Inc.; and Betty Carol Wren d/b/a Loletah's Salon*; CV-2012-900226, Cullman Co., Alabama, attached as **Exhibit "B"**.

in Cullman County and Wren was traveling on County Road 1188. (Exs. A & B; Compl. ¶¶5; Am. Compl. ¶¶4). The Complaints, as Amended, assert that Wren failed to stop and yield at a stop sign and that Wren pulled into the direct path of the vehicle occupied by the Denmarks. *Id.* As a result of the accident, Denmark sustained injuries including quadriplegia and Denmark, Jr. suffered a fatal injury. (Ex. A: Compl., ¶7, Am. Compl., ¶6; Ex. B: Compl. ¶7, Am. Compl., ¶6).[5]

4.      On the February 27, 2012 date of loss, State Farm provided a Business Insurance Policy (Form FP-6103) ("Policy") to Loletah's Salon Inc., policy number 93-BD-M247-7. A copy of the Policy and declarations page is attached as **Exhibit "C."**[6] Loletah's Salon Inc. was dissolved as of December 31, 2006 and therefore was not in existence at the time of the accident giving rise to both underlying lawsuits. (Deposition of Betty Carol Wren,[7] attached as **Exhibit "D,"** pp. 34, 37-38). State Farm was never notified of this dissolution and the policy was renewed annually thereafter. (Ex. D., pp. 30, 38, 57).[8]

---

[5] The allegations in the Underlying Complaints and Amended Complaints speak for themselves. However, a synopsis is attached for the Court's convenience as **Appendix 1.**

[6] The Policy provisions and exclusions applicable to this matter are attached for the Court's ease of reference as **Appendix 2.**

[7] This deposition was taken in this Declaratory Judgment action.

[8] The Policy in force on the date of loss had effective dates of May 4, 2011–May 4, 2012, applied to the business located at 1205 Loring Street NW, Cullman, Alabama 35055 and had liability limits of $300,000 per occurrence. (Ex. C and Deposition of Lori Kissinger, attached as **Exhibit "E,"** p. 43 (taken in Kissinger's capacity as corporate representative of State Farm.))

5.     Prior to dissolution, Wren was president/director of Loletah's Salon Inc. (Ex. D., p. 30, 34). Once dissolved, Loletah's Salon, Inc.[9] became Loletah's VIP Salon (hereinafter "Salon"), a sole proprietorship of which Wren is the sole owner, and was so on the date of loss. (Ex. D., pp. 9, 23, 38, 39).[10] Had State Farm been notified of the legal entity change to a sole proprietorship, the designated insured in the Policy Declarations could have been "Betty Carol Wren," "Betty Carol Wren d/b/a Loletah's Salon," or "Betty Carol Wren d/b/a Loletah's VIP Salon,"[11] rather than Loletah's Salon Inc. (Ex. E, pp. 39-40).

6.     At the time of the auto accident giving rise to the underlying lawsuits, Wren was driving a 2001 Lexus SUV (the "Lexus"). (Ex. D., pp. 11-12). The Lexus was owned by Wren's husband, Jerry Wren. (*Id.*, pp. 12-13, 43-44).[12] According to Wren, the Lexus was "just the vehicle [she] drove" with her husband's permission and Wren did not pay anything to her husband for the use of

---

[9] Although Loletah's Salon Inc. was dissolved and not in existence at the time of the auto accident, it was added as a party to both underlying lawsuits via Amended Complaints, but was subsequently dismissed in both cases. Out of an abundance of caution and to ensure that the determination of this Court in regard to coverage is binding, Loletah's Salon Inc. was included in this Declaratory Judgment action.

[10] Loletah's VIP Salon is a business which provides cosmetology services. (Ex. D., pp. 13-14). The business also sells beauty products, jewelry, antiques and clothing. (Ex. D., pp. 18-19). The business does not have any employees. (Ex. D., p. 40).

[11] If the designated insured in the Policy Declarations was "Betty Carol Wren d/b/a Loletah's Salon" or "Betty Carol Wren d/b/a Loletah's VIP Salon," this designation would be viewed by State Farm in the same manner as if the designated insured was listed as "Betty Carol Wren." (Ex. E., pp. 70-77). Due to this fact, the coverage analysis and result is the same regardless of whether the designated insured was listed as "Betty Carol Wren d/b/a Loletah's Salon" or "Betty Carol Wren d/b/a Loletah's VIP Salon."

[12] At the time of the accident, Wren and her husband lived in the same household and Wren's husband paid the automobile insurance on the Lexus. (Ex. D., pp. 45, 46).

4

the Lexus. (Ex. D., pp. 42, 44). There was no formal agreement between Wren and her husband allowing Wren to use the Lexus; however, her husband was aware Wren used the vehicle for the Salon. (Ex. D., pp. 44-45).

7.      The auto accident occurred on a Monday. (Ex. D., p. 11). The Salon was closed on Mondays. (Deposition of Wren,[13] attached hereto as **Exhibit "F,"** pp. 32-33). On the morning of the accident, Wren drove the Lexus to meet her cosmetologists at the Salon for photographs to be taken to be used in advertising. (Ex. D., p. 14; Ex. 2[14] to same).  After the photo shoot and after "finishing up at the shop," Wren went home to change clothes. (Ex. D., pp. 31, 47; Ex. 2 to same). After changing clothes, Wren was planning to go to Hartselle, Alabama for lunch with her sisters for her "birthday lunch." (*Id.*, p. 18 and Ex. 2 to same; Ex. F., pp. 33, 43). The accident occurred when Wren was en route to Hartselle to meet her sisters for lunch. (Ex. D., pp. 19, 48; Ex. 2 to same). After lunch, Wren was planning to go shopping for her business. (Ex. D., p. 18).

8.      According to Wren, because she lives in a small town and due to the nature of her business, her appearance is very important to her. (Ex. D., p. 14; Ex. 2 to same). The clothes she wears, the way she styles her hair and the car she drives are all important to her image. *Id.* Because of this, Wren is "literally always

---

[13] This deposition occurred in the underlying actions on August 20, 2012 prior to the filing of the Amended Complaints.

[14] Exhibit 2 of Wren's deposition is an Affidavit executed by Wren. This Affidavit was executed after Wren's deposition in the underlying actions and after the Amended Complaints were filed in the underlying actions in an effort to "clarify" Wren's prior testimony. (Ex. D., pp. 48-49).

on the job advertising for [her] business." *Id.* Further, Wren was carrying business documents with her in the Lexus at the time of the auto accident. (*Id.*, pp. 15-16; Ex. 2 to same). It was her apparent intent to work on her taxes for her business that day and she kept the documents with her so that she could periodically work on the taxes when she had a free moment during the day. (*Id.,* p. 16; Ex. 2 to same).

9.      Wren considered the Lexus to be a vehicle she used for her business. (Ex. D., p. 27). Wren stated that she would use the Lexus to perform errands for the Salon from time to time. (Ex. F., p. 40). Wren deducted all of the mileage incurred on the Lexus as a business expense on the business tax returns. (Ex. D., pp. 26-30). However, Wren did not deduct the cost of insurance or depreciation of the Lexus on her business tax returns. (Ex. F., p. 39).

10.      Wren reported the auto accident to her automobile insurance carrier, GMAC, but did not report the accident to State Farm. (Ex. D., p. 50). Wren does not know why she did not report the auto accident to State Farm. *Id.* Wren never contacted anyone from State Farm to report either the accident or any of the underlying lawsuits that were filed related to the accident. (Ex. D., p. 53).[15]

11.      The first notice State Farm actually received of the accident or lawsuits was in October 2012 via counsel for <u>Denmark</u> and *after* the deposition of

---

[15] At the time of Wren's deposition in the underlying lawsuits, it was Wren's understanding that her attorney via GMAC would notify State Farm on her behalf. (Ex. D., p. 56).

Wren. (Ex. E., pp. 46, 53). This approximately eight month delay prejudiced State Farm in that State Farm did not have the opportunity to participate in the initial investigation of the loss, the deposition of Wren or any other discovery or further investigation of the loss in the eight-month span prior to State Farm receiving notice. (Ex. E., 46-51). Further State Farm did not have the opportunity to participate in any other depositions which took place during the time in which State Farm did not have notice. (Ex. E, pp. 50-51).

### III.   RELEVANT LEGAL AUTHORITIES

### A.   <u>STANDARD OF REVIEW</u>

Pursuant to Rule 56(c), Fed. R. Civ. P., the movant is entitled to a judgment as a matter of law where no genuine issues as to any material fact exist. The movant bears the initial burden of proof of showing the absence of any genuine issue of material fact on the matters covered by the Motion for Summary Judgment, but, once the movant has sustained its burden, the burden then shifts to the non-moving party to demonstrate by "substantial evidence that genuine issues of material fact do exist to warrant the matter being submitted to the finder of fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986).

In interpreting the substantial evidence rule, the United States Supreme Court has held "[t]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the

evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. 264 (citing *Adickes v. S.H. Kess & Co*., 398 U.S. 144 (1970)). A summary judgment must be granted, under the undisputed facts, if the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Real Estate Fin. v. Resolution Trust Corp.*, 950 F.2d 1540 (11th Cir. 1992), *rehearing denied*. Furthermore, if the non-moving party fails to establish a genuine issue of fact as to an essential element of his case, then the moving party is entitled summary judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). To successfully defeat a motion for summary judgment, the non-moving party must offer evidence of specific facts showing a genuine issue of fact for trial. *United Steelworkers of Am., AFL-CIO v. Univ. of Ala*., 599 F.2d 56, 61 (5th Cir. 1979). The non-moving party must show more than mere allegations and conclusory statements. *Id.*

**B.    LEGAL ARGUMENT**

    **1.    Legal basis for the duty to defend and indemnify.**

Whether an "insurance company owes its insured a duty to provide a defense in proceedings instituted against the insured is determined primarily by the allegations contained in the complaint." *Hartford Cas. Ins. Co. v. Merchs. & Farmers Bank*, 928 So. 2d 1006, 1009 (Ala. 2005) (*quoting Acceptance Ins. Co. v. Brown*, 832 So. 2d 1, 14 (Ala. 2001) (*citing U.S. Fid. & Guar. Co. v Armstrong*,

479 So. 2d 1164, 1168 (Ala. 1985))). "If the allegations of the injured party's complaint show an accident or an occurrence within the coverage of the policy, then the insurer is obligated to defend, regardless of the ultimate liability of the insured." *Id.* (*quoting Acceptance*, 832 So. 2d at 14 (*citing Ladner & Co. v. S. Guar. Ins. Co*., 347 So. 2d 100, 102 (Ala. 1977))); *Tanner v. State Farm Fire & Cas. Co*., 874 So. 2d 1058, 1065 (Ala. 2003).

If the allegations in the complaint do not constitute a covered accident or occurrence, the court may look to admissible evidence to establish a duty to defend. *Hartford*, 928 So. 2d at 1009-1010; *Tanner*, 874 So. 2d at 1064. Further, "[i]f there is any uncertainty as to whether the complaint alleges facts that would invoke the duty to defend, the insurer must investigate the facts surrounding the incident that gave rise to the complaint in order to determine whether it has a duty to defend the insured." *Hartford*, 928 So. 2d at 1010 (*quoting Blackburn v. Fid. & Deposit Co. of Md*., 667 So. 2d 661, 668 (Ala. 1995)). Finally, if the allegations in the complaint or the evidence presented include both covered and uncovered acts, the insurer must defend at least the claims covered by the policy. *Id.* However, where there is no ambiguity in the terms of an insurance policy, the court must enforce the policy language "as written" and "cannot defeat express provisions in a policy, including exclusions from coverage, by making a new contract for the parties." *Nationwide Mut. Ins. Co. v. Thomas*, 103 So. 3d 795, 805 (Ala. 2012).

9

Here, there is no coverage for the alleged claims in this case based on the clear, unambiguous language of the policy. Thus, this motion is due to be granted.

**2.    This Court has jurisdiction to determine State Farm's duties to defend and indemnify.**

A federal court may exercise jurisdiction over a declaratory judgment action at its discretion. *See Edwards v. Sharkey*, 747 F.2d 684, 686 (11th Cir. 1984). As such this Court has jurisdiction to consider this matter and to determine whether a duty to defend <u>and indemnify</u> exists on the part of State Farm. In fact, this Court, in quoting *Employers Mut. Cas. Co. v. Evans*, 76 F. Supp. 2d 1257, 1262 (N.D. Ala. 1999), held:

> "any issue decided by this court will have to be based on the claims presently stated in the pending state court action," and that "any such determination would not affect possible issues which later arise." The court, therefore, finds that it has jurisdiction to determine State Farm's duties to defend <u>and indemnify</u> its insureds…in the underlying state lawsuit, based on the current allegations and factual assertions stated in the Amended Complaint.

*State Farm Fire & Cas. Co. v. Lamb et al.*, No. 2:08-cv-2311-SLB (N.D. Ala. Mar. 31, 2010)(Blackburn, J.)(emphasis added). Therefore, it is well within this Court's discretion to determine if State Farm has a duty to defend <u>and indemnify</u> in this matter under the applicable Policy.[16]

---

[16] Furthermore, because the duty to defend is broader than the duty to indemnify, *See* Section B.1. above, if this Court finds that there is no duty to defend, the Court must necessarily conclude that State Farm does not owe a duty to indemnify. *State Farm v. Eldridge et al.*, No. 4:09-cv-1144-VEH (N.D. Ala. Feb. 12, 2010)(Hopkins, J.) (*citing USF&G Co. v. Bonitz Insulation Co. of Ala.*, 424 So. 2d 569, 572 (Ala. 1982)).

### 3.      The Wren Defendants are not insureds as defined by the Policy.

Regardless of whether the Policy declarations designated the insured under

the Business Policy to be Betty Carol Wren, individually, Betty Carol Wren d/b/a

Loletah's Salon or Loletah's Salon Inc., none would qualify any of the three as

insureds as defined by the Policy. Policy Endorsement FE-6852 speaks to "Who Is

An Insured" under the Policy. The Endorsement sets forth that

> [i]f you are designated in the Declarations as . . . an organization other
> than a partnership, joint venture or limited liability company, you are
> an insured . . . Your executive officers and directors are insureds, but
> only with respect to their duties as your officers or directors . . . Your
> stockholders are also insureds, but only with respect to their liability
> as stockholders. . .

(Ex. C., Policy End. FE-6852, "Who Is An Insured," 1.d.). In addition, that

Endorsement further provides:

> with respect to bodily injury or property damage arising out of the
> ownership, maintenance, use or entrustment to others of any non-
> owned auto or any agent or employee of an owner of any non-owned
> auto … an executive officer of yours . . . is an insured, but only while
> such "non-owned auto" is being used in your business.

(Ex. C., Policy End. FE-6852, "Who Is An Insured," 3.b.). However, "any

executive officer or manager... is not an insured for any auto owned or leased by

such officer or manager or a member of his or her household." *Id.* (emphasis

added). "[N]on-owned auto" is defined as "any auto you do not own, lease, hire, or

borrow which is used in connection with your business." (Ex. C, p. 32).

11

**a.**   **Betty Carol Wren, individually, is not an insured as defined by the Policy.**

**i.**   **Loletah's Salon Inc. as an Incorporated entity.**

Taking the Policy as written, listing Loletah's Salon Inc. as the designated Insured in the Policy declarations, Betty Carol Wren is not an insured as defined by the Policy because:

> (1) Wren was not acting with respect to her duties as an officer or director of Loletah's Salon Inc. at the time of the accident; (2) Wren was <u>not</u> operating a non-owned auto at the time of the accident; (3) Even if Wren was operating a non-owned auto at the time of the accident, the non-owned auto was not being used for the business at the time of the accident; (4) Even if the car was a non-owned auto and even if the Lexus was being used for the business at the time of the accident, the Lexus was owned by Wren's husband, a member of her household.

<u>First</u>, a plain reading of the above referenced Policy Endorsement provides that Loletah's Salon Inc. is an insured as it is listed in the Declarations and is an organization other than a partnership, joint venture or limited liability company. (Ex. C., Policy End. 6852, "Who is an Insured," 1.d.). The Policy Endorsement further outlines that Loletah's Salon Inc.'s executive officers and directors are insureds, <u>but only with respect to their duties as [Loletah's Salon Inc.'s] officers or directors</u>. *Id.* Based on Wren's testimony, when Loletah's Salon Inc. was incorporated, Wren was the president/director of the business. (Ex. D., p. 34). Therefore, Wren, individually, would be an insured but only with respect to her duties as an officer or director.

However, Wren was <u>not</u> acting with respect to her duties as an officer or director of Loletah's Salon Inc. at the time of the accident and is therefore not an insured. Courts have said that in determining whether conduct is business or personal the focus should be on the purported insured's activity. *See State Farm Fire and Cas. Co. v. Leblanc, et al*, 2013 U.S. Dist. LEXIS 69928, *27 (M.D. Ga., May 16, 2013)(*citing Nova Cas. Co. v. Anderson*, 2005 2005 U.S. Dist. LEXIS 31890, at * 11 (M.D. Fla., Dec. 8, 2005) and analyzing the phrase "conduct of the business" in a business policy)). Where actions are personal pursuits, not business activities performed for the purpose or furtherance of the business, the individual cannot be said to have been acting for the business. *Leblanc, supra.* Further, the insured's activity which caused the injury must be one that he does in conducting the business. *Nova, supra* at *11 (*citing Society Ins. v. Lineham*, 616 N.W.2d 918, 919 (Wis. App. 2000).

The *Nova* Court, in analyzing the phrase "conduct of the business", determined that the insurer had no duty to indemnify a business owner for injuries arising from an automobile accident allegedly caused by one of the business owner's employees after the business owner supplied alcohol to the employee. *Id* at *11-12. The Court so held in spite of the allegations of the complaint because the undisputed evidence established that the actions of the business owner did not arise from, relate to or further the conduct of the business. *Id.* The Court in *Nova*

13

based its holding on the fact that the purchase of the alcohol was not part of the employee's compensation and when the purchase of the alcohol was done, the work day had ended and they had left the job site. *Id.* at *11. The Court further noted in support of its holding that (1) the business owner was not in the business of providing alcohol; (2) the supply of the alcohol to the employee was not an activity that the business owner performed for the purpose of his business; and (3) the act of providing the alcohol to the employee did not arise from, relate to or further the conduct of the business. *Id.* at *12. Additionally, the *Nova* Court stressed that the business owner's "business conduct was distinguishable from [the] social activities with [the employee]." *Id.*

Furthermore, and significant to this case, the *Nova* Court found that the unloading of a truck by the business owner and the employee after purchasing the alcohol did not alter the purpose from being personal. *Nova* at *13-14 (*citing Rayburn v. MSI Ins. Co*., 240 Wis. 2d 745, 753 (Wis. App. 2000) (holding that using business tools while constructing a shed did not alter the purpose of the activity, which was personal)) and *quoting Sentry Ins. Co. v. Sahlberg,* 1995 WL 809951, *3 (Mass. Super. 1995) (finding that an "accidental nexus between [insured's] use of business materials and [his] non-business purpose does not render his activity one in 'the conduct of a business'")). The *Nova* Court noted that there is an important distinction between business and personal activities and the

14

business policy provided coverage for the business and not for activities unrelated to the business. *Id.* at *12-13 (*citing Rayburn, supra*).

With the above law in mind and the undisputed testimony of Wren, it is clear that Wren was not acting with respect to her duties as an officer or director of Loletah's Salon Inc. at the time of the accident. This is because Wren had completed her work at the Salon, traveled home, changed clothes and was on her way to meet her sisters for her birthday lunch when the accident occurred. (Ex. D., pp. 18-19, 31, 47-48 and Ex. 2 to same; Ex. F., pp. 33, 43). It is of no consequence that after lunch she planned to continue working for her business. The act of going to lunch and meeting Wren's sisters was not conduct in furtherance of the Salon, but instead was personal in nature. Utilizing the guidance provided by the *Nova* Court, the act of Wren going to meet her sisters for lunch did not arise from, relate to or further the conduct of the Salon. Further, it is undisputed that the morning work activities had ended. Even though Wren may have planned to resume work activities later in the day, at the time of the accident, Wren was unequivocally not conducting an activity for the purpose of the business.

Additionally, it is of no consequence that Wren had her business taxes in the car at the time of the accident as there is no evidence that Wren was actually working on the taxes at the time of the accident and therefore, she was not acting with respect to her duties as an officer or director at the time of the accident.

15

Finally, it is not determinative that Wren was driving the Lexus, a car she used for business, at the time of the accident nor that Wren testified that she was "literally always on the job advertising for her business."   This is because a simple accidental nexus between Wren's use of business materials and a non-business purpose does not render Wren's activity as one for the business. *See Nova* at *13-14; *Rayburn* at 753; *Sentry* at *3. In summary, Wren's activity at the time of the accident of going to meet her sisters for lunch was clearly personal and not for a business purpose nor done in furtherance of her business. Wren was not acting "only" with respect to her duties as an officer or director of Loletah's Salon Inc. at the time of the accident as required by the Policy and therefore Wren is not an insured.

Second, even if Wren was engaged in business, Wren is still not an insured because the Lexus was not a "non-owned auto."  "[N]on-owned auto" is defined by the Policy to mean "any auto you do not own, lease, hire, or borrow which is used in connection with your business." (Ex. C., p. 32).  Although the terms "own," "lease," "hire," or "borrow" are undefined by the Policy,[17] the case *Metzger v. Country Mutual Ins. Co*., 986 N.E.2d 756 (Ill. App. Mar. 21, 2013) offers persuasive guidance for making a determination in this matter with regard to the

---

[17] "An undefined word or phrase in an insurance policy does not create an inherent ambiguity." *Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So.2d 687, 692 (Ala. 2001). To the contrary, "where questions arise as to the meaning of an undefined word or phrase, the court should simply give the undefined word or phrase the same meaning that a person of ordinary intelligence would give it." *Id.* (citations omitted).

"non-owned auto" analysis. In *Metzger*, plaintiff's vehicle was struck by a truck personally owned by the driver, who used the truck in his business. *Id.* at 757. Plaintiff subsequently sued the estate of the truck driver (he was fatally injured in the accident) and the decedent truck driver's business, McKee Masonry (the business was an S corporation whose sole shareholders were the truck driver and his wife). *Id.* at 758. Plaintiff later filed a declaratory judgment action against the insurer of McKee Masonry, asserting that the business policy on which McKee Masonry was the named insured provided coverage for the truck involved in the accident. *Id.* at 759.[18]  Essentially, the plaintiff in *Metzger* sought a declaration that the truck involved in the accident was a "non-owned" vehicle as defined by the Policy therefore providing coverage for the truck involved in the accident. *Id.*

In finding that the truck was <u>not</u> a "non-owned auto," the *Metzger* Court analyzed the definition provided by the Policy and its applicability to the facts of the case. *Id.* at 762-65. Specifically, the Court took into account the following:

> (1) the truck driver was the purchaser and title holder of the truck; (2) a tax form listing the truck as among business assets of McKee Masonry, and designating the truck as having 100% business use; (3) McKee Masonry was an S Corporation with its sole shareholders as the truck driver and his wife; (4) the truck driver and his wife's intention that the truck was purchased "solely" as "a work truck for the business;" (5) the truck driver kept his business records and work

---

[18] Similar to the Policy involved in this matter, the Policy in *Metzger*, provided coverage for "'bodily injury' or 'property damage' arising out of the use of any 'non-owned auto' in your business by any person." *Id.* at 762. Another similarity is the *Metzger* Policy defined "non-owned auto" as "any 'auto' you do not own, lease, hire or borrow which is used in connection with your business." *Id.*

equipment in the truck; (6) all payments for the truck were paid using the business checking account; (7) the truck was designated as a 100% business asset for tax purposes and the truck driver and his wife kept track of expenses associated with the truck to claim tax deductions; and (8) the truck driver's wife testified that the truck driver was en route in the truck when the accident occurred.

*Id.* at 762.

With the above facts in mind, the *Metzger* Court next reviewed the meaning of the terms "own," "lease," "hire," and "borrow." *Id.* at 763. As the terms were undefined by the Policy, the Court looked to the ordinary and plain meaning of the words by using Black's Law Dictionary. *Id.*[19] The Court addressed the term "borrow" and concluded that property can be borrowed without promise of payment. *Id.* at 763. The Court then concluded that because there was no evidence that McKee Masonry paid or promised consideration for its use, the truck involved in the accident was not leased or hired. *Id.* The Court, however, determined that based on the definition of "borrow," the use of the truck by the driver for McKee Masonry <u>did</u> constitute borrowing. *Id.* Specifically, the Court noted the driver's use of the truck "was actually the corporation's use" of the truck. *Id.* at 764.

The Court then noted the definition of "borrow" in this context "does not require that the lending arrangement be formalized," agreeing with other Courts in finding that "'[f]requency of use is not determinative–or even pertinent' in

---

[19] The Court first outlined that the truck was not leased or hired due to the fact that the plain meaning of both words dictates that payment is involved for services or use. *Id.* at 763.

determining whether a vehicle has been 'borrowed.'" *Id.* (citations omitted). The Court found that even if the driver owned the truck involved in the accident, it was undisputed that McKee Masonry "borrow[ed]" the truck from the driver and therefore, the truck was <u>not</u> a "non-owned" vehicle, concluding that based on the Policy language there was no coverage for the accident under the Business Policy. *Id.* at 765.

Utilizing the analysis and facts from *Metzger*, it is evident that the Lexus in this matter was also <u>not</u> a non-owned auto. According to Wren, the Lexus was the only car she drove and it was used in connection with the business. (Ex. D., pp. 27, 43). In addition, although there was no formal agreement, Wren used the Lexus with her husband, the owner's, permission and he knew she used the Lexus for the business. (Ex. D., pp. 42, 44-45). Based on these facts and as outlined in *Metzger*, the Lexus was a "borrowed" auto.[20] Because the Policy defines a "non-owned auto" to mean "any auto you do not . . . borrow which is used in connection with your business" the Lexus does not fall within this definition.[21]

<u>Third</u>, even if the Lexus is a "non-owned auto," Wren is not an insured because the Lexus was not being used for the business at the time of the accident.

---

[20] Based on the *Metzger* analysis, the Lexus was not "leased" or "hired" because there was no payment involved for the use of the Lexus by Wren or by the business. (Ex. D., p. 44). The Lexus was also not "owned" as it is clear that the Lexus was owned by Wren's husband. *Id.*

[21] This is the case regardless of whether the "you" in the Policy definition of "non-owned auto" applies to Wren or Loletah's Salon Inc. This is because either way, the Lexus was still being "borrowed," either by the Salon or by Wren.

Policy Endorsement FE-6852 not only provides that an executive officer is an insured while using a non-owned auto, but that an executive officer is an insured <u>only</u> while such "non-owned auto" is being used in your business. (Ex. C., Policy End. 6852, 3.b.). As outlined above, at the time of the accident, the Lexus was not being used in the business of the Salon and therefore, Wren would not be an insured under this section of the Policy.

<u>Fourth</u>, even if the Lexus is a "non-owned auto," and even if the Lexus was being used for the Salon at the time of the accident, Wren would not be an insured as defined by the Policy because the Lexus is owned by a member of Wren's household. Policy Endorsement FE 6852 further outlines that "any executive director or manager is <u>not</u> an insured for any auto owned or leased by such officer or manager <u>or a member of his or her household</u>." (Ex. C., Policy End. FE 6852, 3)(emphasis added). As testified by Wren, her husband owns the Lexus and is a member of her household. (Ex. D., pp. 42-45). Therefore, even if the Lexus was a "non-owned auto," and even if it was being used in the business at the time of the accident, Wren would not be an insured as defined by the Policy.

**ii. Even if the Policy reflected the structure of the business as that of a sole proprietorship, neither Betty Carol Wren, Wren d/b/a Loletah's Salon nor Wren d/b/a Loletah's VIP Salon would be an insured as defined by the Policy.**

Had the Policy declarations reflected the <u>current</u> structure of the business at the time of loss, that being one of sole proprietorship, neither Wren, Wren d/b/a

Loletah's Salon, nor Wren d/b/a Loletah's VIP Salon would be an insured as defined by the Policy. As noted above, had State Farm been notified of the legal entity change to a sole proprietorship, the designated insured in the Policy Declarations could have been "Betty Carol Wren," "Betty Carol Wren d/b/a Loletah's Salon," or "Betty Carol Wren d/b/a Loletah's VIP Salon," as opposed to Loletah's Salon Inc. (Ex. E, pp. 39-40). [22]

Taking the above into account and reviewing the Policy language, if "Betty Carol Wren," had been the designated insured in the Declarations, Wren would be an insured under section 1.a. of "Who Is An Insured" as Wren is an individual. (See Ex. C., Policy End. FE-6852, 1.a.). However, Wren would be an insured "only with respect to the conduct of a business of which [Wren] was the sole owner." *Id.* The same analysis would apply if the designated insured in the Policy Declarations was "Betty Carol Wren d/b/a Loletah's Salon" or "Betty Carol Wren d/b/a Loletah's VIP Salon," because the "d/b/a" entities would be treated as if the designated insured was listed as "Betty Carol Wren." (Ex. E., pp. 70-77).

Therefore, if the designated insured was listed as "Betty Carol Wren" "Betty Carol Wren d/b/a Loletah's Salon" or "Betty Carol Wren d/b/a Loletah's VIP Salon" in the Declarations of the Policy, neither would be an insured under this

---

[22] If the designated insured in the Policy was "Betty Carol Wren d/b/a Loletah's Salon" or "Betty Carol Wren d/b/a Loletah's VIP Salon," this designation would be viewed by State Farm the same as if the designated insured was listed as "Betty Carol Wren." (Ex. E., pp. 70-77).

Policy definition because as outlined above, at the time of the accident, Wren was not acting with respect to the conduct of the business. *See generally Nova, supra; Rayburn, supra; Sentry, supra.*

**4.    The Automobile Exclusion applies to preclude coverage for the underlying lawsuits and no exception to the Exclusion is applicable.**

   **a.    The Automobile Exclusion applies to preclude coverage.**

Even if this Court were to determine that any or all of the Wren Defendants were insureds as defined by the Policy and were engaged in business at the time of the accident, the Automobile Exclusion applies in this case to preclude coverage for the underlying lawsuits.  At the outset, the Business Policy is <u>not</u> an auto policy and therefore does not provide coverage for the underlying auto accident.

The Policy specifically excludes coverage for "bodily injury or property damage arising out of the . . . use . . . of any . . . auto . . . owned or operated by or rented or loaned to any insured."  (Ex. C, p. 22). Alabama law has found a similar exclusion as unambiguous and applicable to exclude coverage for a loss resulting in death. *See St. Paul Mercury Ins. Co. v. Chilton-Shelby Mental Health Center*, 595 So.2d 1375, 1377 (Ala. 1992) (finding a similar exclusion as not ambiguous and clearly excluding coverage for any injury, including death, due to the ownership or use of an "auto" owned or operated by an insured). Therefore, even assuming that any of the Wren Defendants were insureds, by its plain meaning, this exclusion operates to exclude coverage to all three for this auto accident.

As noted above, the thrust of the underlying matter arises out of the use of an automobile. The Complaints and Amended Complaints allege bodily injury arising out of an automobile accident. *(See generally* Exs. A & B). Further, it is undisputed that Wren was operating the vehicle at the time of the accident. (Ex. D, p. 11). Therefore, assuming any or all of the possible entity designations were insureds, the Automobile Exclusion unambiguously excludes coverage for the underlying actions as the injury arose out of the use of an auto operated by an insured. This is the case regardless of whether it was Wren in her individual capacity operating the vehicle at the time of the occurrence or Wren operating the Lexus for the entities Wren d/b/a or Loletah's Salon Inc. The fact remains that either would be considered to be an insured, operating an auto at the time of the occurrence, therefore triggering the exclusion.[23]

### b.   The Exceptions to the Automobile Exclusion are inapplicable.

The Automobile Exclusion provides certain exceptions to the Exclusion which do not apply to create coverage in this case. (Ex. C., p. 23). Specifically, exception "e." to the Automobile Exclusion outlines that the Automobile Exclusion "does not apply to . . . bodily injury or property damage arising out of the use of any non-owned auto in your business by any person other than <u>you</u>." (Ex. C., pp.

---

[23] Arguably, as outlined and discussed in depth above, in regard to Loletah's Salon Inc., the Lexus involved in this matter can also be viewed as "borrowed" by or loaned to Loletah's Salon Inc. Therefore the exclusion is further triggered in that the Lexus could not only be viewed to have been "operated" by Loletah's Salon Inc. but also "loaned" to Loletah's Salon Inc.

22-23)(emphasis added). First, as outlined above, per the *Metzger* case, the Lexus is not a "non-owned auto" as defined by the Policy and thus this exception does not apply. Second, even if this Court determines the Lexus <u>was</u> a "non-owned auto" as defined by the Policy, utilizing the reasoning of the *LeBlanc* and *Nova* cases as outlined above the Lexus was <u>not</u> being used for business purposes at the time of the accident therefore precluding the exception from applying. Finally, it is undisputed that Wren was using the Lexus at the time of the accident and therefore because of this the exception does not apply. This is because if Wren, Wren d/b/a Loletah's Salon or Loletah's Salon Inc. were insureds, Wren would qualify as a "you" under the Policy. (Ex. C., p. 1) Because of this, even if the Lexus is a "non-owned auto" and even if it was being used for the business at the time of the accident, because it was being operated by Wren at the time, the exception does not apply as the exception outlines that it must be "the use of any non-owned auto in your business by any person <u>other than you</u> . . ." *Id.* (emphasis added).

For the reasons set forth above, the Policy does not provide coverage for the underlying lawsuits. Thus, State Farm has no duty to defend or indemnify and this motion is due to be granted.

**5.     The Conditions of the Policy have been violated due to late reporting.**

An independent basis to grant this motion is the insureds' violation of policy conditions. The Policy dictates that "You must see to it that [State Farm] [is]

notified promptly of an occurrence that may result in a claim. . .” (Ex. C., p. 29). Additionally, the Policy requires that “if a claim is made or suit is brought against any insured, you must see to it that [State Farm] receive[s] prompt written notice of the claim or suit.” *Id.* Further, the Policy states that “you or any other involved insured must . . . immediately send [State Farm] copies of any demands, notices, summonses or legal papers received in connection with the claim or suit...” *Id.*

Alabama law is clear with respect to the notice conditions of an insurance policy. If the insured fails to comply with the notice conditions of the policy in that the length of the delay is untimely and the insured has no valid reason for the delay, the insured forfeits coverage under the insurance policy. *See Lemuel v. Admiral Ins. Co.*, 414 F. Supp. 2d 1037, 1066 (M.D. Ala. 2006). In regard to an “excess” insurance carrier, the Court will look not only at the length of the delay and whether the insured has presented valid reasons for the delay but also whether the insurer was prejudiced by the delay. *Id.*[24]

### a.   Timely Notice Was Not Provided.

Under Alabama law, “prompt” notice, as used in the Policy in this case, has been interpreted to mean that notice must be given within a reasonable time in view of all the facts and circumstances.” *St. Paul Fire & Marine Ins. Co. v. Elliott,*

---

[24] The Policy in this case, if deemed to provide coverage, would be excess over the automobile policy insuring Wren. This is because the Policy provides that the “insurance provided under Coverage L – Business Liability is excess over any other insurance not written by us which would apply if this policy had not been written.” (Ex. C, p. 35).

545 So.2d 760 (Ala. 1989). This Court, citing the Alabama Supreme Court, has held "[a] five-month delay in giving notice is sufficiently protracted as to require the insured to offer evidence of a reasonable excuse for the delay." *USF Ins. Co. v. Metcalf Realty Co., Inc*., et al., 2013 U.S. Dist. LEXIS 124398, *25 (N.D. Ala. August 30, 2013) (*citing Travelers Indem. Co. of Conn. v. Miller*, 86 So.3d 338, 343 (Ala. 2011) (*quoting Nationwide Mut. Fire. Ins. Co. v. Estate of Files*, 10 So. 3d 533, 536 (Ala. 2008))).[25] In this case, it is undisputed that Wren never gave State Farm notice of the lawsuit. (Ex. D., p. 50). State Farm first learned of the auto accident and the lawsuits on October 12, 2012 from counsel for the Denmarks. (Ex. E., pp. 46, 53). This was nearly eight months after the date of the auto accident and nearly six months after the filing of the first lawsuit.[26]  This notice was also nearly two months after the deposition of Wren. Based on the above, the notice to State Farm in this case was untimely as a matter of law.

### b.      There is No Valid Reason for the Untimely Delay in Notice.

Based on the undisputed testimony of Wren in this matter and in the underlying matter, there is no valid reason for the delay in giving notice to State Farm which could excuse the failure to notify State Farm of the underlying

---

[25] *See also Pharr v. Cont. Cas. Co*., 429 So.2d 1018, 1019-20 (Ala. 1983) (holding that an eight-month delay without excuse is "unreasonable as a matter of law"); *Southern Guar. Ins. Co. v. Thomas*, 334 So. 2d 879, 883-5 (Ala. 1976) (concluding that a six-month delay is "unreasonable as a matter of law" without a reasonable excuse).

[26] The underlying incident occurred on February 27, 2012 and the first suit was filed on April 19, 2012. (*See* Ex. A, Complaint).

accident or the filing of the lawsuit. The test for whether "notice is necessary under the policy is 'not a subjective one measured merely by the good faith of the insured, but is an objective one.'" *Arrowood Indem. Co. v. Macon Cty. Greyhound Park, Inc.*, 757 F.Supp.2d 1219, 1225 (M.D. Ala. 2010) (*quoting Pan Am. Fire & Cas. Co. v. DeKalb-Cherokee Cntys. Gas Dist.*, 266 So.2d 763, 771 (Ala. 1972)). Therefore, the Court must look to the reasons offered by the insured for the delay in notice and determine based on an objective standard whether it is reasonable. *Arrowood* at 1226. Where there is no reasonable excuse offered for the delay, the issue may be decided as a matter of law. *Id.* (*citing Evanston Ins. Co. v. Stonewall Surplus Lines Ins. Co*., 111 F.3d 852, 860-61 (11th Cir. 1997)); *See also Haston v. Transamerica Ins. Servs*., 662 So.2d 1138, 1141 (Ala. 1995).

In this matter, Wren has offered no excuse for the delay in giving notice to State Farm. <u>First</u>, Wren admitted that she never reported a claim to State Farm and "doesn't know" why she did not make a report. (Ex. D., p. 50). <u>Second</u>, Wren's "understanding" that her attorney retained via her automobile insurance carrier would notify State Farm is unreasonable as it is the insured's burden to notify the excess-liability insurer if necessary. *See Arrowhead* at 1228; *See also Sharp Realty and Management, LLC v. Capitol Specialty Ins. Corp*., 2012 U.S. Dist. LEXIS 75353, *44 (N.D. Ala. 2012) (noting that failure of the insured's counsel to notify the insurer is attributable to the insured). <u>Third</u>, the failure to provide timely notice

27

in this matter was unreasonable in that due to the seriousness of the injuries in the underlying cases, it was evident early on that the underlying case was a policy limits case potentially implicating the State Farm Policy. *(See generally* Exs. A & B).[27]  <u>Fourth</u>, the failure to provide timely notice to State Farm was unreasonable based on Wren's undisputed knowledge regarding the alleged "business" use of the Lexus. According to Wren, she was always on the job promoting her business and she claimed all of the Lexus' mileage as a business expense. (Ex. D., pp. 14, 27-30). In light of this admitted knowledge regarding the alleged persistent use of the Lexus for her business, it is unreasonable that Wren failed to give State Farm notice of an accident which occurred in this alleged business vehicle.

### c.  State Farm was prejudiced by the untimely and unreasonable delay in notice.

State Farm was prejudiced by the failure to give notice. Under the Policy, State Farm is entitled to investigate, defend and settle any claim or suit. (Ex. C, pp. 20, 29). This right of State Farm's was directly prejudiced by the delay and it is of no consequence to assert that State Farm would have done anything different had notice been timely given. *See Arrowhead* at 1229 (*citing Lemuel, supra* at 1069 (finding such argument "unsupported and speculative at best," and insufficient to

---

[27] *See also Arrowhead* at 1226-1227 (holding that an insured's belief that the underlying suit would not implicate the excess-liability policy was objectively unreasonable where the underlying suit was valued as a high dollar case in a high jury verdict venue and where the Plaintiff in the underlying suit demanded near or in excess of the primary-liability policy limits to settle the case).

overcome a finding that the excess insurer's contractual rights had been lost due to the delayed notice.)). Due to the delay, State Farm was unable to participate in the initial investigation of the underlying loss. (Ex. E., p. 46). Further, State Farm was unable to participate in the deposition of Wren in the underlying lawsuit and any and all discovery or further investigation which occurred for the eight months when State Farm was without notice. *Id.* at 46-51. Further, due to the seriousness of the injuries involved in the underlying matter and the clear potential early on of reaching policy limits, State Farm was prejudiced by not being able to be involved early on. Accordingly, due to the insureds' failure to provide timely notice of the occurrence or suits, this motion is due to be granted.

**6.    Medical Payments Coverage is not available under the Policy.**

The Policy provides for payment for medical expenses for bodily injury caused by an accident in pertinent part as follows: "[o]n premises you own or rent...[o]n ways next to premises you own or rent . . .or [b]ecause of your operations..." (Ex. C, p. 25). However, the Policy also provides that "we will not pay expenses for bodily injury . . . [e]xcluded under Business Liability Exclusions; [or] arising out of the use of any non-owned auto." *Id.* This provision is unavailable in this case due to the fact that the accident in question undisputedly did not occur on the premises of the business, nor on ways next to the premises owned or rented by the business. (Ex. B, Am. Compl. ¶4; Ex. D, p. 9). Further, as

29

established, *supra*, the accident in question was not caused because of the business operations. Finally, the exclusion provided in conjunction with the Medical Payments provision clearly excludes this coverage due to the applicability of the Automobile Exclusion in the Policy.

## IV.   CONCLUSION

In sum, State Farm has no duty to defend or indemnify the Wren Defendants for the underlying lawsuits. The Wren Defendants are not insureds as defined by the Policy. Additionally, the Automobile Exclusion precludes coverage for the underlying loss. Further, the conditions of the Policy have been violated and State Farm has undisputedly been prejudiced by the delay in giving notice to State Farm. Finally, the Medical Payments Coverage is unavailable for the underlying loss.

**WHEREFORE, PREMISES CONSIDERED**, State Farm respectfully moves this Court to grant its Motion for Summary Judgment and to declare it has no duty to defend or indemnify Wren, Wren d/b/a/ Loletah's Salon/Wren d/b/a/ Loletah's VIP Salon or Loletah's Salon Inc. in the underlying suits.

**RESPECTFULLY SUBMITTED** this the  3rd day of February, 2014.


**\s\ A. David Fawal**
**A. DAVID FAWAL [FAW-004]**
**David.fawal@butlersnow.com**
**KATHERINE "KATIE" POWELL [TAY-081]**
**Katie.powell@butlersnow.com**

30

**OF COUNSEL:**
**BUTLER SNOW LLP**
One Federal Place, Suite 1000
1819 5th Avenue North
Birmingham, Alabama 35203
Telephone:  (205) 297-2200
Facsimile:   (205) 297-2201

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served upon all parties to this action by electronic mail using the Court's CM/ECF filing system, which will send notification of such filing to the following:

J. Barton Warren, Esq.
**WARREN & SIMPSON, P.C.**
105 North Side Square
Huntsville, Alabama 35801

Kimberly S. DeShazo
**WEBSTER, HENRY, LYONS & WHITE,**
**BRADWELL & BLACK, P.C.**
Two Perimeter Park South, Suite 445 East
Birmingham, Alabama  35243

Zeb Little
The Griffith Building
409 1st Avenue SW
Cullman, Alabama 35055

**Done this the  3rd day of February, 2014.**

**A. David Fawal**
**OF COUNSEL**

ButlerSnow 19259169v1